Call up our third case, 24-30446, Williams v. Integon. Mr. Peebles? Mr. Peebles? Ready? May it please the court, good morning. Good morning. I represent Ellen Williams, the appellant in this case. I do request five minutes be reserved for rebuttal. I'm here to ask this court to reverse the lower court ruling. It ruled wrongly for several reasons. The first being it relied on a notice as if it was part of a policy, in which it was not, and then it misinterpreted that notice based on the words in the notice that do not apply to the parties in this case as far as whether or not there is a third party beneficiary. Additionally, the lower court decided that a triggering purpose was the only purpose for which the policy should be recognized to give a third party beneficiary any kind of benefit. There's no basis for that, and it contravenes all the law that provides a variety of different reasons for a third party to have a benefit, even if it's not the triggering purpose for the policy. Third, this court essentially identified and reviewed this issue in the Lee case. It reviewed the Williams case, and in Williams it specifically found there that there was not a third party beneficiary. However, in its reasoning, it noted the Lee case and said, Lee is a circumstance where there is a third party beneficiary because there's manifested a very clear intent to benefit the borrower in that case. I'm here today to suggest to this court that the reasoning it found in Lee is the same reasoning it should apply in this case. It should reverse the lower court that made an error, and I invite the panel to ask any questions it has. Proceed. One of the biggest problems the lower court had in its reasoning is that it decided that the policy's main purpose was as a forced place policy to protect the interest of the bank that sought the insurance policy in order to protect the mortgage note that it had on this case and on the property. The lower court decided that because this was the purpose, that was the only party to this contract that could bring any kind of claim. What it failed to recognize is it doesn't have to be a triggering purpose in the policy for there to be a right of my client as a third party beneficiary to have an action to go before the court. There was a clear purpose by an express provision in the policy that awarded my client benefits by the residual loss from any kind of loss that occurred from an event, in this case from a hurricane event. It was an error for the lower court to exclusively rely on what triggered the policy, which was to protect the bank. That was the first error it made. In the course of doing that, it looked to a notice and it said, this notice language, which is a letter that was sent to the insured, it said it has verbiage in it that identifies who the insured is, who the insurer is, and it doesn't provide necessarily a benefit to the borrower who was my client. There were several things wrong with its finding when it reviewed that notice. It treated the notice as if the terms of the notice were governing terms of the contract. The notice was not. The policy specifically outlines what the policy documents are, and nowhere does it refer to the notice. Moreover, the policy says no other documents will control or provide terms that govern the rights of the parties, and it also refers to the notice and identifies what its purpose is, which is merely to supply two or three terms that govern what the policy will do as far as the policy limits, the address, and so forth. But in the process of identifying the policy, both the notice and the policy expressly show that the notice does not govern and its terms do not dictate who has what benefits. Counsel, let me ask you, you're covering them, but let me identify them and ask you a couple of things. The factors that come from probably a variety of Louisiana opinions, including Joseph, two of the three factors seem somewhat similar. One is the manifestly clear intention to benefit, which you have been dealing with in this part, and the other is the incidental nature of the benefit. I don't know how distinguishable those two are. In both, we're looking at whether the borrower was either part, both, but initially whether it was intended to benefit the borrower, and then secondly, is that benefit incidental? Third factor, secondly, in my discussion with you. It does seem to me that your argument may be stronger that there was a manifestly clear intention to benefit when you look at the policy itself, and as the language you may have just quoted, we'll adjust each loss with you, we'll pay you the amount of loss, we'll pay the borrower any residual. That to me is a manifestly clear intention to benefit probably. We'll have to resolve that. But it does seem to me that it may be incidental. What should we look to in determining what does incidental benefit mean, unless you want to dispute that that's part of our analysis? I do agree it's part of the analysis. It is the third factor, and I would submit that it is not incidental. The first way I'd like to show you is by providing some examples of what have been regarded as incidental, because they demonstrate clearly the kind of different scenario than what we have in this case. If you look at three cases I cited, Kilson, City of Shreveport, and the third case escapes me, but it was the gasoline case. In each of those circumstances, what you had was an advantage that was identified in the reasoning of the court that some third party had. In the gasoline case, there was a contract between the state and the gasoline company to provide gasoline to the state. The city said, hey, look, we're not getting gas out of this, and that's an advantage that we get from this contract. So we should be able to sue for that reason. And the court said, no, no, no, no. Yeah, you get an advantage because you're part of the people who might get gasoline, but nowhere in the agreement was it intended for you as an individual to get a benefit. Like in this case where we have an express provision, you're just someone who might benefit by an advantage. You do not qualify as a third party beneficiary. Well, Kelso, one thing, I saw the three opinions you cited, and that may be the best of the three, though I don't recall now. But I'm trying to, I guess in a way, correlate that first factor to this one. And what you're talking about now, it does seem to me that those contracts are not even intended to benefit the party that it's trying to get a benefit from. So you never get to the third factor. So it does seem to me you've already satisfied the intention to benefit, or you need to, whether you satisfy a person or not. So when you have that kind of case, it is an intention to benefit that person, that entity. It can't just be incidental. And so if the case you just cited doesn't satisfy the first factor, it seems to me. No, the case I was citing was strictly for the purpose of identifying No, no, I understand that. So when you do have a party who's intended to be benefited, how do we know if that benefit is only incidental? Well, there are several reasons. I think we've identified, and you've conceded that the first and third seem to be very similar by the express provision. But that is enunciated in the first factor. To differentiate it, I think there are several factors that have been considered. One that I think is especially important is the consideration. Here, what we have is a policy limit for which premiums were paid. And there was an express provision that said part goes to the bank and the leftover goes to the third party. Very express. It's not as if it's some tangential advantage. This is an amount of money that is calculated after the first part is cut off that they're going to receive. So it's not an incident to something that may have happened during the course of the transaction. It is an identified benefit that they will get that's not merely incidental, but it's going to help repair the home, and premiums were paid for that policy limit. I think that's crucial, and the lower court completely overlooked this fact. It's being treated as though, and hypothetically, and I put this in my brief, if all the money is paid on the note down to the dollar, and there's $77,000 on coverage, under Indigon's position and the lower court's reasoning, they could satisfy the whole policy by paying that $1 because that's all that's left. That wasn't intended in the provisions here, and that supports why it's not incidental, because the reason that they're wanting to give the balance over is so that my client can repair a home with the money that's left over, and it's in the interest of both parties to do that, both the bank and my client, and it's not some kind of mere advantage, like in the cases I cited, where they can somehow benefit from it. It's a clearly expressed benefit that they are going to get, and I'd like to differentiate that from the other two cases too. The water case as well as the insurance case for the auto insurance. These are just situations where somebody gets an advantage and says, I want to take advantage of this opportunity to get some money, I'm going to file a claim. That's completely different when the contracting parties are putting terms in to say this person gets the balance because it's going to save the house. That makes it more than incidental. Let me ask you a question. Was there a reason the complaint did not set forth the amount of her expected damage or potential damage over and above what the mortgage company was saying? The initial complaint was filed in state court. Identifying those distinctions wasn't important there. It got removed. It was satisfied upon removal by the removal papers that demonstrated what the repair costs would be and that they would be well over the jurisdictional limits, and as a result, it wasn't really necessary at that point in the state court to make those distinctions. In federal court, based on this motion, we've asked for an opportunity to amend to the extent that's important, but that's why it wasn't put initially in there. When you said the papers in state court showed there would be a balance set to paying off the mortgage, what was the nature of that? Not attached to the complaint, apparently. No, it wasn't in state court where that was alleged. In state court, there were more general allegations that provided that damages were owed because there was no jurisdictional limit or anything like that. Perhaps there should have been some descriptions about a third-party beneficiary's status, which we submit to this court as an easily amendable part of the complaint, and it goes back to the initial facts, but that wasn't in the initial complaint. That was in the removal papers by the defendant where they provided additional summary judgment-like type of evidence to establish that. Is there at least an allegation that was presented in district court, if not actual evidence, that the benefit to your client is now certain? That wasn't in the removal papers because it really wasn't... Well, no, I'm just asking when this case was dismissed, was there anything in front of the district court, if you offered anything, either just an assertion, that if you allow us to amend, we can assert and show maybe an assertion in the complaint only, that there is a balance after paying off the mortgage that my client will be entitled to? The court didn't consider that in its opinion and it wasn't part of the papers to the extent that it was argued or decided. Would you agree that's part of what we have to analyze, that at least that's part of the three-part test, that the benefit must be certain? Absolutely. And I see my time's running out, but I do want to address that issue right now because I know it's a big part of what the appellee says. Well, it's part of the reason I asked you about why it wasn't in the complaint. I mean, state court, at least the last time I was in Louisiana court, was fact pleading. Not so much was it necessary for jurisdiction, but we might not be here now if it was asserted. Federal court is notice pleading. That's why I asked, not whether it was necessary to establish a jurisdiction, but if the district court had had that allegation about an expectancy of damages over and above the mortgage, perhaps that's an option the district court could have taken and you might not be here now. But that's either here or there. You're saying, well, you can come in now to say what that is, but it's sort of tied to the question that Asafa was asking. Is there a discernible number and amount? Yes, Your Honor. Is that a secret? It's not part of the record, but I know what it's going to be. It's not part of the record because it didn't need to be. So it wouldn't have changed anything. You say what didn't need to be, but you're the appellant trying to stay in court. So, you know, you're the appellant trying to appeal to stay in court. So, you know, you could be back where you are with an affirmance because we've got to figure these things out and you want to say, well, it's not necessary. Your Honor, it is necessary. The lower court did not consider this factor. It punted on the issue because it said courts have identified that this second prong is easily amendable in the complaint, so I'm not going to address it. So they ruled on the first and third. It would not have made a difference because they didn't consider it to make a difference. If it's a difference for this court, we're able to satisfy it. Okay. Maybe this is the same question you're answering, but how does the selection of a dollar amount of liability limit the impact of this case? It could if this court were to consider a jurisdictional issue which was not before the lower court and was not part of the papers, but I guess cut to the chase on it. If there is and there was a payment of an amount to the bank, the leftover amount, which in this case would be $49,000, would be the amount of the remaining benefits plus the penalties, and the penalties under the case law can be added to the remaining amount, which in this case would bring it well over $75,000. That's what would be pled in an amended complaint to satisfy the second prompt. Okay. Well, you've reserved your rebuttal time. Thank you. Thank you. All right. Mr. Garrison? May it please the court, Travis Garrison here on behalf of Indigon National Insurance Company. We've discussed a lot about the Joseph factors here today. That was a Louisiana Supreme Court case that set out the three criteria for establishing a third-party beneficiary status. But the Joseph court also recognized the prior court, the Louisiana Supreme Court decision in Anderpont, and that Anderpont set out factors which actually came from a Tulane Law Review article previously. You just had to get that in. You're playing to the audience. That's okay. And so the in-rate Katrina Canal barges, which the lower court here relied on as part of its ruling, had relied on those Anderpont cases. The Joseph case recognized the Anderpont factors. It cited it in footnote six. And the Joseph case also discussed, the Joseph case recognized that the Anderpont factors were an analytical tool for determining intent that's necessary for determining whether or not there was an intention to establish a third-party beneficiary. In fact, the Joseph court also discussed the Shreveport case, which used those Anderpont factors to determine that the contract there was not made to discharge an obligation from the state to Shreveport, and the advantage to the city did not benefit the state. Why is it not plausible then on these facts that Ms. Williams is not a third-party beneficiary? Judge? So first of all, people usually stipulate for themselves not third persons. That's recognized in the liquid drill case, which is a Fifth Circuit case, and indeed that's a legal presumption. Well, Kelsey, you seem to be saying that these forced placement insurance policies, no matter how they were written, will never benefit the mortgager because it's always going to be they're not a party to it. It's the bank trying to secure themselves for damage to their secured property. So it seems like an absolute rule here that you're pushing to us. Judge, what we're saying here is that this is – any benefit to the Ms. Williams that she could get here is purely incidental to the fact – And that's what I mean. – that it will never, in a forced place policy, that it will never benefit the borrower no matter how the policy is written. Well, I don't know, Judge. I mean, there's a lot of different ways policies can be written, and we've got to take it on a case-by-case basis. I know what our policy says. That's an easy answer, but I do think what you're saying would be global because it's the lender who's getting the policy to protect itself. Right. And it has language in it that would protect the borrower, thus in this case. But you say that's not good enough, and I think that's going to be the universal way that lenders get these policies. Right. So one of the things that can help us determine that here is one of the things that opposing counsel conceded was part of this analysis to determine whether the benefit was merely incidental is, was there some consideration? Is there some consideration for the benefit to the third party? And there's not here. There's no paying the premium. Well, no, that's been well established by the underlying courts that it's not sufficient for the payment of the premium from the borrower through escrow is not sufficient. I've never seen that in the brief, but you say it's settled in Louisiana law? So I believe Brown and Gary and several others that have been cited in the briefs, they discuss that, and they say the payment of the premiums through escrow payments by the borrower is not sufficient to establish consideration or to establish a third party beneficiary relationship. Can you tell me, explain why you think it was proper for the district court to consider the notice of insurance when interpreting the policy? Sure, Judge. So the notice is part of the policy in the way that it is referenced by the policy, and it's basically the declaration for the policy. Without the notice, we don't know who Ms. Williams is, we don't know what the policy limit is, and we don't know where her property is. That is what essentially makes us part of the master policy. And the notice really, that statement in the notice that states that the policy is for the benefit of Flagstore and may not sufficiently protect the borrower's interest, that statement merely reiterates what is clear from the policy as a whole from the four corners of the policy. And so I really don't think we need that statement to show that the policy is clear, but to the extent that the court is uncertain about the intent of the parties or to the extent that the court cannot determine the intent of the parties from the language in the policy, I think you can look at that notice to show, okay, this clearly states that it's for the benefit of the named insured, which is the lender, Flagstore. Now, one other thing that counsel talked about was consideration, and counsel argued that Intigon provided Williams a right to recover the covered loss in excess of the lender's interest in exchange for a portion of the premium payments. However, there's no evidence in the record to show that a higher premium was paid for the borrower to receive the direct payment of covered loss in excess of the lender's interest. There's no evidence to show that. There's no indication of that. Furthermore, and more importantly, Your Honors, is that the lender and insurer set premiums and were not concerned with securing a benefit to the borrower, especially when it was the borrower's failure to obtain the policy that drove the lender to obtain this lender place policy. And also, the only time that the borrower gets any direct benefit, the sole basis for the borrower here, the plaintiff alleging that she is a third-party beneficiary, is the loss payable provision, which states, We will adjust each loss with you and will pay you. If the amount of loss exceeds your insurable interest, we will pay the borrower any residual amount due on the loss. And the only time that the borrower gets a direct payment is when the amount exceeds the lender's insurable interest. And so this is incidental. Any direct payment to the borrower is merely an incident of the insurance company not being able to pay the lender beyond its insurable interest. What is your best case for an interpretation of incidental that helps you? The in-rate Katrina Canal barges case. And I also believe the Dale case that was cited, that was a 2024 case in the Eastern District where the court, although it looked at some language and determined that the borrower in that case failed to allege that the amount in controversy exceeded the lender's interest, the court did not give the borrower the right to amend. The court dismissed with prejudice there, which essentially shows that any amendment would have been futile. And in that case, the court focused on the lack of certainty of a benefit to the borrower and the incidental nature of the potential benefit as the basis for its dismissal. And so one thing I've been trying to get at here, Your Honors, is that the only time the plaintiff gets the benefit is if the loss, the direct benefit is if the amount of covered loss exceeds the lender's insurable interest. And so my friend argued that in that case, the lender actually receives a benefit, receives an advantage by the borrower getting that direct payment because the borrower would then go ahead and make repairs to the home to protect the collateral of the loan. But that's the wrong way to look at it here. The way to look at it is the lender, if it gets paid its full, if the amount of loss exceeds the lender's insurable interest, the lender just keeps that full amount, discharges the debt, releases the mortgage. It no longer has any interest in the property. It matters not to the lender at that point whether or not any repairs are made to the property. The lender obtains no benefit at that point whether or not Ms. Williams makes repairs to the property or not because the lender has now recouped everything that was owed to it on the loan. And the lender doesn't get anything. If we go back to the andropod factors, which I was trying to discuss a little bit earlier, those factors are we look at the existence of a legal relationship between the promisee, the promisee here would be the lender, and the third person involving an obligation owed by the promisee to the beneficiary of the performance of the promise which the performance of the promise will discharge. So that's one factor. But let's look at that here. There's no duty from the lender to the borrower here. It doesn't discharge anything. The lender doesn't discharge any duty to the borrower. In fact, the duty runs the other way. It's the borrower that must repay the loan. And therefore, the potential for the borrower to receive amounts in excess of the lender's interest is merely incidental. Furthermore, one more point under those andropod factors are the existence of a factual relationship where securing an advantage to the third person may beneficially affect the promisee in a material way. There's nothing that securing the advantage of the borrower, potentially getting a direct payment in excess of the lender's interest, that doesn't beneficially affect the lender in any way because by the time the borrower actually gets that payment, the lender's out. The lender's out. They don't have anything to worry about. It doesn't matter to them if the property's repaired because they don't need that collateral. Their loan's been satisfied. And so I think those are some of the strongest points here. Furthermore, the plaintiff also tries to argue or argues, excuse me, in her brief that the policy places duties on her to occupy the property and remain current on loan payments to receive the direct payment. But that is sort of a misstatement of the policy. The language that she's talking about here comes under the limit of liability portion of the policy that basically says that if the property is vacant and the mortgage is in default, then Intigon is liable only up to the unpaid principal balance at that time of loss. That is a very specific provision there. That is not contemplating duties of the borrower at all. That is contemplating a situation where Flagstar is either already foreclosing on the property or is about to. And so it is contemplating Flagstar recouping some of those benefits through foreclosure. It has nothing to do with the duties on the borrower. And if we look at the policy, it defines unpaid principal balance a little bit differently than you might think. The unpaid principal balance is the borrower's unpaid balance, less unearned interest, unearned insurance premiums, and collection and foreclosure expenses, late charges, penalties, and other things added too. So what you're looking at here is that's just the policy basically of the insurance company saying, okay, we understand you're about to foreclose on this home because you put it in default and it's vacant. And we understand that lender, Flagstar, you're going to recoup most of those additional expenses from the foreclosure. We don't need to pay you for those. But even if the plaintiff can accurately characterize the vacancy or having to occupy the building and stay current on payments, even if she could accurately characterize as those duties, there's several cases that establish that duties under the policy, under the contract for the third party, do not establish an intent to make the third party a third-party beneficiary. We can look at Gary, Grafia, and Joseph for that. There's other cases that make clear that the insurer's conduct in adjusting the claim do not confer a third-party beneficiary status because it's the language of the policy that matters. And we can look at the Gary and Butler cases for that. Gary cites Butler, and all these are in the briefs. Ms. Williams also makes several self-serving assumptions about the lender and the insurer's intent on setting the policy limit and allowing the borrower to receive direct payment. There's no record evidence regarding consideration in computing the policy limit. There's nothing here that shows what went into these two parties determining what the policy limit would be. What is in the record about what led up to the forced placement? I mean, the lender did not get proof of insurance, or it was just several years into the loan, and the policy was dropped. What do we know on the back story? So, essentially, very little, but most of that is shown through the notice of insurance, which essentially explains most of the time—let's go back and look for it—most of the time, it explains that the borrower has failed to provide the mortgage company with sufficient proof that it had— Just borrowed a plate language. Pretty much, yes.  Okay. But, you know, setting the policy limit as a some certain versus setting it as the lender's insurable interest, to me, there's—you know, what's the logical explanation for that? There could be several. We don't have anything in the record to show how they came to that decision or not, but it's just as logical to assume that that's a business decision for all parties to know the policy limits at all times, and there's nothing in that that I believe shows an intent to confer on the borrower additional rights not set forth in the policy. At the very least, you know, the plaintiff would have to explicitly allege a numerical value of the loan balance and a numerical value of the alleged covered loss to show the covered loss exceeds the loan balance sufficient to state a cause of action, and the plaintiff hasn't done that probably because she would have to obtain the loan balance. But we submit that this analysis is unnecessary, just like the lower court did. This analysis is unnecessary because the potential uncertain and incidental benefit does not give the plaintiff the right to enforce the contract between the insurer and the lender. That contract is the policy that time after time indicates a relationship only between the lender and the insurer and rights only of the lender against the insurer. For example, the loss is adjusted with the lender only. Only the lender can cancel the policy at any time. Only the lender declares the amount of loss. Only the lender can demand appraisal. The loss is not adjusted with the borrower, and the borrower does not declare the loss and cannot demand appraisal. But somehow the borrower can simply allege a loss in a suit sufficient to enforce a contract. I don't think that reads with the policy. I don't think that tracks with the policy and intent of the parties here. All of this trouble arises from a lack of certainty that the borrower will really receive anything from this merely incidental benefit. Let me ask you. The trial judge found that the plaintiff did not plead or satisfy the requisites for a third-party beneficiary and then additionally disallowed or discussed the option to amend if such facts could be pled to satisfy. But the district court determined any amendment would be futile, so therefore she did not allow amendment. If the panel were of the view that at a minimum an amendment should be allowed, what do you say to that? Would you like the district court to say it's impossible for her to plead anything that keeps her here? That is our position, Judge. Our position is that it doesn't matter because it would be a merely incidental and uncertain benefit. It is incidental because there really was no consideration. I've discussed all the plaintiff's arguments about whether or not there was consideration, and they fall flat. First of all, there were no duties on the borrower. I discussed that earlier. That policy language was about the limits on the policy. It had nothing to do with the duty on the borrower to stay in the home. That was about, hey, if you're about to foreclose on the home lender, we're only paying you this, which is even less than the lender's insurable interest, so it's more about the lender. It has nothing to do with the borrower. And then the other way the plaintiff tries to establish consideration is by saying that a portion of the policy premiums were paid to get this additional benefit of a direct payment to the borrower, and there's just simply no evidence of that and no reason to think that. This lender has had to go out and get this policy because the borrower failed to do what it was supposed to do under the mortgage contract. And so there's no evidence that it's trying to secure any benefit from the borrower, and the lender doesn't benefit from it because the lender, once that amount is paid, once there's an amount of loss in excess, covered loss in excess of the lender's insurable interest, the lender can just, as the only named insured, the lender can just keep every dime of its insurable interest, and it no longer has any interest in the property. It doesn't matter if the plaintiff fixes the house up and repairs it. It's not collateral for the bank anymore. All right. Thank you. Thank you, sir. Thank you. We're both. Thank you, Your Honor. I really have to address this issue of consideration, which I quite frankly don't think is essential for the court to make its decision, but it has been mentioned in some of the case law. Counsel's trying to portray the premiums and the cost of consideration as if, I think as he said, there's no evidence that there was something higher paid to cover what my client would benefit from from the residual loss. It's a misunderstanding to go that way. That would be true perhaps if the nature of the policy was only to pay the note, the balance that was owed to the bank. If that were the case, then you might be talking about, well, in addition to that, what do you pay to the borrower? That's not what we have here. We have a nice, clear policy limit of $77,000, and premiums were paid to cover a risk up until that policy limit. Whether or not my client has a residual balance of $1 or $76,099 really doesn't matter to the extent of what the risk was to the insurer and what the premiums were paid to cover that risk. That is the starting point and really the ending point on identifying what was the consideration that was paid in this case that would include a benefit to my client. That is simply the premiums that were paid to cover a policy limit up to $77,000 for which my client is entitled to the residual balance after the bank is satisfied. Counsel, do you argue that the idea of consideration is not actually part of the analysis? It's in Ingrid Katrina. It's in some of our cases. The Supreme Court of Louisiana, my understanding, has never adopted that. Are you arguing that that's not part of what we need to decide? I think it shouldn't be, but I think I'd lose, quite frankly, because there isn't a case law that says that consideration is important. I'm just confident and comfortable that there is clear consideration in this case to satisfy that part. If this court chooses not to recognize that, I think it shouldn't. That would be fine with you. That would be fine with me, and I quite frankly don't think that the jurisprudence provides that as a necessity. I'm not worried about that because, as I've said, the consideration that was paid in this case was the premiums for the policy up through the policy limit. Your Honor is absolutely correct with the way he portrayed the position of Indigon, which is we have these provisions that are expressed that pay you residual balance. We even have provisions that say we're only liable if you don't vacate the place due to some kind of default. But we don't really mean all that, because even if you fall within those parameters, you don't default and you don't vacate, and despite the express provision, we never have to pay you anyway because we think it's incidental, and we're not going to recognize our own terms that specifically provide a residual balance to you. We never, ever have to pay that. That is the position they're bringing to this court, and it would mean that, essentially, they're robbing people of premiums to cover a policy limit of $77,000, despite the fact that, according to their position, they will never have to pay that to the extent that there's anything less on the note than $77,000. That is not the intention of this policy. That's not only bad public policy. That is contrary to the express provisions, and I don't think that's what was intended between the bank and the insurer. Well, I'll leave that point, and I need to make just one more or two quick points before I run out of time. What's the best indicator or evidence that there was an intent for your client to be a third-party beneficiary? The best indicator is that payment provision. Council goes through all kinds of provisions that identify and express what the duties are between the insured and the insurer, as if somehow those control what a third-party beneficiary's requirements and benefits are. They don't. Those govern the relationship between the insurer and the insured, but to the extent that you're looking for what the best provision is to identify whether or not there's a third-party beneficiary, it is the provision that they identified for the benefits. They expressly chose a provision, different than many other policies, that says, in this policy, we are going to identify a third-party who gets a residual balance. That doesn't happen in all policies, but it happened in this one, and that express provision, clear words under basic contract law, governs as far as establishing who's got what benefit in this case. All right, last question. The district court expressly addressed the issue of amendment and said, well, a party could be allowed to amend if it wouldn't be futile, but she says in her opinion that here amendment would be futile because there's no basis upon which the plaintiff could leave facts to put her within the scope of a third-party beneficiary. What's your response to that? I'm not saying that's what we do. I just want to know what your answer is. My answer is that the first and third prongs that she ruled on would get reversed and that for the reasons we've stated, a third-party beneficiary status would be found, and to the extent that the second prong needs to be satisfied by an amendment, what that amendment would essentially do is it would allege the facts that put my client in the position to qualify for residual balance, which under this policy they would have to have in order to qualify for benefits. It would allege facts sufficient to establish what that residual balance is, and as a result, this is the issue that the lower court punted on, it would provide the terms of identifying them as a third-party beneficiary, the amounts they're entitled to, and that would satisfy the second prong of what the case law says. All right. Was there a point you wanted to make and I didn't let you make? I'll let you finish up. I thought you were trying to finish when I asked my question. There were several points, but the one I was trying to make and I was ahead with. I'll give you one. I appreciate that, Your Honor. The one point is this. I need to correct something counsel said. He said that there were case law that identified that premiums do not establish consideration. The payments of premiums do not establish consideration. That's not what the cases that he cites identify. What those cases say is that the payments of premiums do not entitle the borrower to be subrogated as an insured. That is a completely different issue. We are not taking the position that we're somehow subrogated and we are now insured. We are a third-party beneficiary. We don't need that provision in those cases, which he cited, to establish our right to recover in this case. I wanted to make that clear to the extent that consideration can satisfy anything this court wants on whether consideration was paid. It doesn't matter whether our client paid it or the bank paid it. In this case, our client did. Regardless of where it comes from, just the fact that there is consideration is the important part. That is what goes to establish the policy limit, the risk, and the fact that something was exchanged in this case for what is ultimately a residual benefit to my client. Is there any case law that, contrary to what the counselor had, that supports you, that in this third-party beneficiary context, paying consideration as your client did would satisfy that factor? I didn't find that an issue in the cases that you're finding, except for the lower court cases that overwhelmingly support my position. But, no, I didn't see a very good analysis on that consideration from the lower courts. And I certainly didn't see, in Katrina or this case, either court identify what was before them so clear that it blinded them as far as what was being paid in the premiums, which I submit to this court as a consideration. All right. Thank you, counsel, for your briefing and arguments. An interesting case, to put it mildly. It's good to have a good old Louisiana case, since we're sitting here at Tulane. I hadn't seen stipulation, poor old tree, until I left out of the bar exam. But, anyway, it's good to go digging back. But thanks to counsel and this argument. This completes the argued cases for the panel for the day, and we will stand at recess until 9 a.m. tomorrow. Thank you.